**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH MULLETT, | ) | CASE NO. 5:17-cv-2380 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Keith Mullet (hereinafter "Plaintiff"), challenges the final decision of Defendant

Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"),

denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits

("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant

to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge

pursuant to the parties' consent. (R. 12). For the reasons set forth below, the Commissioner's

final decision is AFFIRMED.

## I. Procedural History

On September 6, 2011, Plaintiff filed his applications for POD, DIB, and SSI, alleging a

disability onset date of March 29, 2011. (Transcript ("Tr.") 198-209). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 125-175). Plaintiff participated in the hearing on July 2, 2013, was represented by counsel, and testified. (Tr. 66-110). A vocational expert ("VE") also participated and testified. *Id*. On July 6, 2013, the ALJ found Plaintiff not disabled. (Tr. 27-40). On November 28, 2014, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (Tr. 1-4).

On January 25, 2015, Plaintiff filed a complaint in the Northern District of Ohio challenging the Commissioner's final decision. (Case No. 5:15-cv-00144, R. 1). On December 2, 2015, the court reversed and remanded for further proceedings. *Mullett v. Colvin*, No. 5:15-cv-144, 2015 WL 7779226 (N.D. Ohio Dec. 2, 2015) (Vecchiarelli, M.J.).

In the interim, on May 4, 2015, Plaintiff had filed new applications for POD, DIB and SSI. (Tr. 1006-1020). On March 8, 2016, the Appeals Council, noting the court's determination, ordered the new applications consolidated with the earlier ones and remanded the matter to the ALJ. (Tr. 689-693).

On July 11, 2016, a new hearing was held where Plaintiff, represented by counsel, and a VE testified. (Tr. 552-595). On August 30, 2016, the ALJ found Plaintiff not disabled. (Tr. 542). On September 18, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 505-509).

On November 12, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 14, 15 & 16).

Plaintiff asserts the following assignments of error: (1) the ALJ did not apply the treating physician rules with respect to Henry Vucetic, M.D.; (2) substantial evidence did not support the

ALJ's consideration of a functional capacity evaluation from November 13, 2013; and (3) the hypothetical question posed to the VE did not account for all of Plaintiff's limitations. (R. 14).

## II. Evidence

### A. Relevant Medical Evidence[1]

With respect to evidence submitted before the first ALJ's decision, the court incorporates the following summary of the facts from Plaintiff's previous appeal to federal court.

#### 1. Medical Reports

In 2004, prior to Plaintiff's alleged onset date of March 2011, Plaintiff underwent a vestibular test due to complaints of dizziness. (Tr. 302-03.) Judith White, M.D., diagnosed vertigo. (Tr. 303). On January 3, 2005, Plaintiff had an MRI of his cervical spine. (Tr. 309.) The image showed mild, diffuse cervical canal stenosis, a disc osteophyte at C6-7 with sac compression, and no overt cord compression. (*Id.*)

During March 2011, Plaintiff treated with Douglas Wenger, M.D., and had been laid off from his job as a welder. (Tr. 315.) Plaintiff felt he could no longer work as a welder because of back pain. (*Id.*) Dr. Wenger listed diagnoses of back pain, fibromyalgia, depression, and vertigo. (*Id.*)

A treatment note dated March 30, 2012, included Plaintiff's comment that he was performing yard work for a friend and cutting grass. (Tr. 384.) A few months later, on August 15, 2012, Plaintiff presented to Kathleen Scroggins, M.D. (Tr. 444-46.) Plaintiff denied dizziness and headaches, but complained of all-over body pain that increased with any activity. (Tr. 444.) He reported a recent increase in low back pain that radiated down both legs. (*Id.*) Due to pain, it took Plaintiff three times as long to mow grass. (*Id.*) He had spasms in his back at night. (Tr. 454.) Dr. Scroggins assessed benign hypertension, fibromyalgia, vertigo, and radiating low back pain. (Tr. 446.) She prescribed medication. (*Id.*)

After a fall that caused him to hit his chest in September 2012, Plaintiff saw Dr. Wenger. (Tr. 441.) Plaintiff reported that the fall occurred after he had worked outside all day, had lit a bonfire, and had some alcoholic beverages. (*Id.*) Plaintiff reported that the next thing he remembered after falling was that the police and paramedics were at his side. (*Id.*) Plaintiff's wife had witnessed similar "episodes"

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

in the past. (*Id.*) Dr. Wenger ordered tests to examine seizure-like activity. (Tr. 442.)

On October 5, 2012, Plaintiff saw Kimberly Stewart, M.D., for fibromyalgia. (Tr. 435-37.) Plaintiff also described a 12 year history of syncope and vertigo. (Tr. 435.) He did not sleep well and experienced fatigue that became worse as the day progressed. (*Id.*) Plaintiff complained of headaches, heart palpitations, back and joint pain, swelling in his hands, muscle aches, dizziness, and paresthesias in the arms and legs. (*Id.*) During an examination, Dr. Stewart found that Plaintiff displayed "a few tender points." (Tr. 436.) The doctor diagnosed myalgia, polyarthralgia, syncopal episodes, and vertigo. (Tr. 437.) Dr. Stewart stated that she would pursue additional testing in light of mild weakness exhibited on physical examination. (*Id.*) She opined that Plaintiff appeared unusually fatigued after the examination and recommended testing for myasthenia. (*Id.*) Dr. Stewart also wanted a work up for inflammatory arthritis and myopathy, as well as an MRI of Plaintiff's neck due to his history of fainting spells and vertigo. (*Id.*)

Plaintiff returned to Dr. Stewart on December 12, 2012. (Tr. 420.) Dr. Stewart explained that Plaintiff's most recent MRI was "notable for a disc at C6-7" that was "moderate sized in nature." (Id.) Otherwise, tests for myasthenia and rheumatoid arthritis returned normal. (Id.) Dr. Stewart assessed cervical disc disease and referred Plaintiff to a neurosurgeon. (Tr. 422.)

On January 4, 2013, Glenn Black, M.D., admitted Plaintiff to Barberton Hospital. (Tr. 394.) Dr. Black noted that Plaintiff had a recurrent history of syncope and episodes of dizziness. (*Id.*) The doctor placed Plaintiff on a halter monitor, which showed periods of asytole, or failure of the heart's electrical system. (*Id.*) On January 7, 2013, Dr. Black installed a pacemaker. (*Id.*) The following day, Dr. Black discharged Plaintiff in much improved condition. (*Id.*)

Plaintiff presented to Harvey Vucetic, M.D., on January 14, 2013, for pain in his cervical and lumbar spine as well as fibromyalgia. (Tr. 494.) Plaintiff described his cervical spine pain as "constant" and radiating into his arms, hands, and lower back. (*Id.*) His low back pain radiated down his back to the top of his feet. (*Id.*) Plaintiff also indicated that Dr. Wenger had previously diagnosed fibromyalgia. (*Id.*) On physical examination, Plaintiff's gait, extremity strength, and neurological examination were normal. (Tr. 497-98.) Plaintiff's cervical MRI showed a moderately sized C6-7 disc herniation. (Tr. 498.) Dr. Vucetic diagnosed a herniated cervical disc without myelopathy, cervical neuralgia, and thoracic or lumbar radiculitis. (*Id.*) He referred Plaintiff to physical therapy and recommended a cervical epidural injection as the next step in care if pain persisted. (Tr. 498-99.) The doctor also diagnosed myalgia and myositis, commenting that Plaintiff "definitely [was] suffering from fibromyalgia pain." (Tr. 499.) Dr. Vucetic instructed Plaintiff that exercise was the best treatment for fibromyalgia. (*Id.*)

On February 11, 2013, Plaintiff treated with Dr. Vucetic for lumbar spine pain that radiated into his right leg. (Tr. 488.) Dr. Vucetic noted that Plaintiff was seeing a physical therapist for his cervical spine, and physical therapy exercises were helpful but provided only short-term relief. (*Id.*) Plaintiff rated his pain as a "6 out of 10." (*Id.*) On physical examination, Dr. Vucetic found reduced sensation around C5-C6, reduction in cervical range of motion, and normal bilateral upper extremity strength. (Tr. 491.) Plaintiff's upper extremity neurovascular examination was normal. (*Id.*) Dr. Vucetic assessed sciatica due to lumbar disc displacement, radiculitis, and cervical disc displacement. (Tr. 492.) Because Plaintiff complained of radiating low back pain, Dr. Vucetic added a low back regimen to his physical therapy plan. (Tr. 488, 492.)

Plaintiff treated with Dr. Wenger on February 14, 2013. (Tr. 416.) Plaintiff reported that he had improved since receiving a pacemaker and had not experienced fainting spells. (*Id.*) Dr. Wenger adjusted Plaintiff's medication to treat hypertension and prescribed wrist splints for carpal tunnel syndrome. (Tr. 418.)

On April 22, 2013, Plaintiff treated with Dr. Vucetic for cervical and lumbar spine pain, as well as some left wrist pain that extended into his thumb and index finger. (Tr. 470.) Dr. Vucetic noted that Plaintiff had been very active lately and painted an entire barn. (*Id.*) Plaintiff requested a third epidural injection for lumbar spine pain that had returned. (*Id.*) Dr. Vucetic assessed displacement of a lumbar disc, obesity, and carpal tunnel syndrome. (Tr. 474-75.) The doctor prescribed a lumbar spine epidural injection, a carpal tunnel splint for the left arm, and an anti-inflammatory. (*Id.*)

On May 13, 2013, Dr. Wenger recommended that Plaintiff continue using wrist splints for carpal tunnel and consider wrist injections if neck injections did not provide relief. (Tr. 415.)

A report from Dr. Vucetic, dated May 22, 2013, indicated that Plaintiff presented with cervical and lumbar spine pain. (Tr. 459.) Plaintiff stated that as of late, he had been welding a lot more and woke up with pain starting in his elbow and radiating into his thumb. (*Id.*) Plaintiff complained of neck pain radiating down into his arms and fingers, which he described and burning with numbness and paresthesias. (*Id.*) Dr. Vucetic diagnosed obesity, cervical disc displacement, myalgia and myositis, cervical radiculopathy, displacement of a lumbar disc, and lateral epicondylitis. (Tr. 464-65.)

### 2. Agency Reports

On October 13, 2011, Morgan Koepke, M.D., conducted a physical consultative examination of Plaintiff. (Tr. 330-32.) Plaintiff complained of all-over body pain,

primarily in the neck and back, and general fatigue due to fibromyalgia. (Tr. 330.) Plaintiff also complained of vertigo, which could cause a shaking sensation, nausea, or vomiting. (*Id*.) His vertigo had improved over the years and no longer occurred on a daily basis. (*Id*.) In terms of activities, Plaintiff could drive a car and had difficulty with stairs due to pain. (Tr. 331.) He was able to sit or stand for 30 minutes, walk half a block, and lift or carry up to 40 pounds. (*Id*.) He could perform self-care, cook, and clean. (*Id*.)

Upon physical examination, Dr. Koepke found that Plaintiff had a normal range of motion in his cervical and dorsolumbar spine, and only mild tenderness in the lower cervical area. (Tr. 331.) His straight leg raising tests were negative. (*Id*.) Plaintiff had good grip strength bilaterally and a full range of motion and strength in all extremities. (*Id*.) Dr. Koepke noted that Plaintiff tested positive for six out of 18 fibromyalgia tender points. (*Id*.) The physician commented that Plaintiff did not say that the points were tender until she palpated them a second time and told Plaintiff to report what hurt. (*Id*.) Plaintiff's neurological examination was normal. (Tr. 332.)

Dr. Koepke opined that Plaintiff would be able to participate in full work duties without any restrictions. (Tr. 332) He would be able to stand for up to six hours in an eight-hour workday and could lift and carry up to 40 pounds on a regular basis. (*Id*.) Dr. Koepke reviewed treatment notes from Plaintiff's primary care physician and reported that she could not see where the physician performed tests for fibromyalgia. (*Id*.) Dr. Koepke opined that Plaintiff's examination that day was not consistent with a diagnosis of fibromyalgia. (*Id*.)

State agency physician Maureen Gallagher, D.O., conducted a review of the record on October 27, 2011. (Tr. 132.) Dr. Gallagher opined that Plaintiff could occasionally lift up to 50 pounds and frequently lift up to 25 pounds. (Tr. 131.) He could stand, sit, or walk for approximately six hours in an eight-hour workday. (*Id*.) Plaintiff needed to avoid all exposure to hazards, such as machinery and heights. (Tr. 132.) On March 6, 2012, Leigh Thomas, M.D., performed a second review of the record. (Tr. 149.) Dr. Thomas affirmed Dr. Gallagher's opinion in total. (Tr. 147-48.)

*Mullett*, 2015 WL 7779226, at *1–4.

### 3. Medical record Since Previous Decision

On November 22, 2013, Plaintiff underwent a functional capacity evaluation ("FCE") performed by physical therapist Jim Micall. (Tr. 1537-1551). Mr. Micall observed Plaintiff's active range of motion ("ROM") was within functional limits with respect to Plaintiff's

shoulders, elbows, wrists, hands, ankles and feet. (Tr. 1542). Plaintiff's active ROM was

somewhat reduced and/or caused pain in the hips and knees. *Id.* Plaintiff reported pain with grip

testing and with push/pull testing (Tr. 1542-1544). Mr. Micall indicated that Plaintiff was able to

sit and stand for less than 30 minutes each during the FCE. (Tr. 1547). Mr. Micall opined that

Plaintiff was cooperative and exhibited good effort (Tr. 1548), but also observed "[s]ubmaximal

efforts in seated and standing positions (grooved pegboard test and total body dexterity tests)

also cause positional fatigue and increased symptom with 2 minutes of activity." (Tr. 1551). Mr.

Micall summarized that Plaintiff could lift 15 to 20 pounds and push or pull 58 pounds. *Id.*

Plaintiff could seldom stand, occasionally sit, occasionally turn his head, and seldom bend or

stoop. *Id.* The physical therapist checked a box indicating that Plaintiff was "disabled totally

from employment or work at home," and believed that Plaintiff did not even have the capacity

for sedentary work. *Id.*

On January 8, 2014, Plaintiff saw Elise Leone, a nurse practitioner, and reported worsening

neck pain, intermittent lower back pain with no radiation, and bilateral knee pain that was

constant but stable and was aggravated by climbing stairs and walking. (Tr. 1368). Physical

examination showed normal ROM of the right wrist and limited active ROM in the left wrist;

normal ROM of both elbows; and normal ROM of the right shoulder but "active painful range of

motion" of the right shoulder. (Tr. 1372). Examination of the cervical spine revealed no atrophy,

no crepitus, and no deformities; Plaintiff had a normal gait and symmetrical posture. *Id.* Plaintiff

had normal bilateral strength in the upper and lower extremities. (Tr, 1372-1374). He had

decreased sensation in C5, C6, C8, L5, and S1. *Id.* Nurse Leone assessed cervical radiculopathy,

myalgia and myositis NOS, and displacement of lumbar disc NOS. (Tr. 1375). Plaintiff was

continued on his current medications, and advised to perform activities as tolerated and to follow

an exercise program. *Id.*

On February 26, 2014, Plaintiff underwent surgery, specifically a C6-C7 anterior cervical decompression and fusion. (Tr. 1235-1236).

On October 27, 2014, Plaintiff reported passing out in the bathroom, noting that such an event had not occurred since before he received his pacemaker. (Tr. 1209). Plaintiff reported resuming his medications only a few weeks earlier due to an earlier loss of insurance. *Id.* Dr. Wenger assessed syncope, tobacco abuse, benign hypertension, and obstructive sleep apnea. (tr. 1211). On October 31, 2014, Plaintiff told Dr. Wenger he walks the dog for 30-45 minutes daily, and Dr. Wenger encourage the continued exercise and encouraged weight loss. (Tr. 1215-1216).

On November 5, 2014, Plaintiff returned to Dr. Vucetic reporting constant and fluctuating back pain that radiated. (Tr. 1377). Plaintiff reported that he did well after the fusion surgery, but was having pain in his left arm. *Id.* On physical examination, Dr. Vucetic observed no gasping or shortness of breath, tenderness in the spine, normal strength in all extremities bilaterally, normal gait, moderate muscle spasm, active painful ROM of the lumbar spine, active pain free ROM of the hips and knees, and normal fine motor skills and coordination. (Tr. 1381-1382). Dr. Vucetic assessed displacement of lumbar disc, cervical radiculopathy, and chronic pain nec [sic]. (Tr. 1383).

On December 3, 2014, Dr. Vucetic reported similar findings on physical examination. (Tr. 1384-1389). Dr. Vucetic assessed myalgia and myositis NOS, thoracic and lumbar radiculitis, and chronic pain. (Tr. 1390).

On January 26, 2015, Plaintiff received a lumbar epidural injection. (Tr. 1400-1402).

On January 29, 2015, Plaintiff reported some improvement to nurse Leone, but complained of pain and weakness in the cervical spine, which he rated as moderate to severe. (Tr. 1405). On

physical examination, nurse Leone observed normal pain free ROM in the hips, knees, ankles, right shoulder, and elbows, but active painful ROM in the left shoulder. (Tr. 1408-1409). She further observed normal strength in the upper and lower extremities, limitation of motion in the cervical and lumbar spine, tenderness in the cervical and lumbar area, moderate muscle spasm in the lumbar spine, decreased sensation in the right upper extremities, positive straight-leg raise on the right, and normal gait. *Id.*

On February 16, 2015, Plaintiff again received a lumbar epidural injection. (Tr. 1416).

On February 26, 2015, nurse Leone's physical examination yielded similar findings to the prior examination one month earlier. (Tr. 1418).

On March 19, 2015, a lumbar CT scan revealed "[m]oderate generalized bulging of the L4-L5 disc causing mild compression of thecal sac and moderate narrowing of neural foramina bilaterally," and "[m]ild disc degeneration at L3-L4 and L5-S1 without significant compression on thecal sac or nerve roots." (Tr. 1240-1241).

On April 18, 2016, nurse Leone recorded decreased ROM, swelling and tenderness in both knees, decreased ROM and tenderness in the neck, and decreased ROM, tenderness, muscle spasm in the lower back, neurological weakness, and a sensory deficit in the right leg. (Tr. 1562). Plaintiff's gait was normal. *Id.*

On May 16, 2016, Phillip Wilcox, M.D., performed a video arthroscopic evaluation of Plaintiff's right knee, which revealed osteoarthritis but no meniscal tear. (Tr. 1568). Physical examination demonstrated good ROM of the right knee and no significant swelling (Tr. 1570).

On June 7, 2016, Dr. Wilcox noted Plaintiff had started physical therapy, and was able to ambulate normally despite reports of some discomfort. (Tr. 1571). Dr. Wilcox observed good ROM of the right knee and no effusion or instability. (Tr. 1573).

4**. Medical Opinions Since Previous Decision Concerning Functional Limitations**

On July 31, 2015, Diane Manos, M.D., a State Agency medical consultant, reviewed Plaintiff's records and indicated that he could lift 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; and stand/walk for 4 hours in an 8-hour workday. (Tr. 603). Plaintiff could occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs, but never climb ladders/ropes/scaffolds. (Tr. 604). He could frequently perform fine and gross manipulation (fingering and handling), but no overhead reaching. (Tr. 604-605). Plaintiff should avoid all exposure to hazards, specifically powerful electrical fields and unprotected heights. (Tr. 605).

On February 27, 2016, State Agency physician Elizabeth Das, M.D., reviewed the medical records and assessed limitations mirroring those of Dr. Manos. (Tr. 637-639).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the

claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since March 19, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: generalized anxiety disorder, major depressive disorder, social phobia, hypertension, fibromyalgia, vertigo, carpal tunnel syndrome, lumbar and cervical disc disease, sleep apnea, sinus node with asystole, bilateral knee degenerative joint disease and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. He can occasionally stoop, kneel, crouch and crawl. He can frequently perform fine gross manipulation, fingering and handling bilaterally. He can frequently reach overhead bilaterally. He should avoid all exposure to hazards including powerful electrical fields and unprotected heights. He is limited to unskilled work consisting of simple tasks performed in a static environment that experience few if any work related changes. Those changes that might occur would be gradually introduced, explained and/or demonstrated. He is limited to work with no strict time or strict high production quotas. He is limited to frequent superficial interaction with others meaning that he should not engage in sales, arbitration, negotiation, conflict resolution and should not direct or manage others and not engage in group tasks. Finally, he should not be responsible for the health or safety of others.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on ***, 1968 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 19, 2011, through the date of this decision (20

CFR 404.1520(g) and 416.920(g)).

(Tr. 528-541).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Issues One Through Three; Treating Physician Rule

Plaintiff's brief on the merits raises multiple issues, several of which are interrelated. (R. 14). The first three issues raise one assignment of error—that the ALJ failed to follow the

treating physician rule for claims filed before March 27, 2017, with respect to the evaluation of Dr. Vucetic's opinion. (R. 14, PageID# 1652-1656). The Commissioner does not challenge that Dr. Vucetic was a treating source. (R. 15).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's

application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The Commissioner argues that the ALJ did not reject the diagnoses of fibromyalgia and "cervical post laminectomy syndrome," but actually accepted those diagnoses. (R. 15, PageID# 1683). The court agrees. The ALJ explicitly includes fibromyalgia and "lumbar and cervical disc disease" among Plaintiff's severe impairments at Step Two.[2] (Tr. 529). However, a diagnosis

---

[2] Neither Plaintiff's brief nor his reply contends that the ALJ's finding—that Plaintiff suffers from severe cervical disc disease—does not encompass Cervical Post Laminectomy Syndrome. (R. 14 & 16).

alone is of little consequence, as it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits").

The Commissioner asserts that Plaintiff's treating physician argument hinges on the assumption that the ALJ rejected an opinion from Dr. Vucetic, but points out that Dr. Vucetic did not provide an opinion regarding Plaintiff's functional abilities. (R. 15, PageID# 1683). In other words, the Commissioner contends Plaintiff has not identified any opinion rejected by the ALJ. *Id.* The court agrees.

Despite the Commissioner's argument, Plaintiff's reply does not identify any functional limitation offered by Dr. Vucetic that the ALJ rejected. (R. 16). Plaintiff does point to a treatment note of Dr. Vucetic indicating his opinion that "[t]he patient definitely is suffering from fibromyalgia pain."[3] (R. 16, PageID# 1692, *citing* Tr. 1149). This statement, however, is of minimal significance. The ALJ clearly accepted "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" such as pain, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …" (Tr. 532). Dr. Vuectic's statement says nothing about the severity of Plaintiff's fibromyalgia pain or its limiting effects. Again, the "mere diagnosis of fibromyalgia is insufficient to render a claimant's complaints of disabling pain credible." *Turner v. Colvin*, No. 1:13CV1916, 2014 WL

---

[3] The very same treatment note also contains Dr. Vucetic's opinion that the best treatment for fibromyalgia is exercise and the physician urged Plaintiff to swim. (Tr. 1149).

4930677, at *11–12 (N.D. Ohio Aug. 7, 2014) (White, M.J.) (internal quotations omitted), *report and recommendation adopted*, 2014 WL 4930680 (N.D. Ohio Oct. 1, 2014); *Vlaiku v. Astrue*, 2008 U.S. Dist. LEXIS 64442, *38 (N.D.Ohio Aug. 4, 2008) (McHargh, M.J.) (same), *report and recommendation adopted*, 2010 WL 2244095 (N.D. Ohio Jun. 3, 2010); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working …but most do not and the question is whether [claimant] is one of the minority.")

Nothing in the treating physician rule compels an ALJ to find a claimant's assertion of fibromyalgia pain disabling. Plaintiff's argument is wholly without merit. He identifies no opinion by Dr. Vucetic that was rejected by the ALJ. Furthermore, given that the ALJ limited Plaintiff to sedentary work—the most restrictive exertional level—Plaintiff cannot reasonably argue that the ALJ ignored Dr. Vucetic's observation that Plaintiff suffered from fibromyalgia pain. Whether the ALJ erred by finding Plaintiff's reports of disabling level pain not entirely credible is a separate issue that Plaintiff has not raised in his brief.[4]

### 2. Issue Four: Weight Ascribed to a Stage Agency Physician's Opinion

Plaintiff's fourth issue is not entirely clear. Plaintiff asserts that the ALJ violated the treating source rule by assigning greater weight to the opinion of State Agency consultative

---

[4] Failure to develop a legal argument alleging a deficiency with the ALJ's credibility analysis waives any argument on the issue. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 U.S. Dist. LEXIS 64805, 2016 WL 2868735 at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors).

examiner Dr. Koepke than to his treating sources, whom Plaintiff does not identify. (R. 14, PageID# 1656). To the extent Plaintiff restates his argument with respect to Dr. Vucetic, the court has already determined that argument has no merit, as Plaintiff has not identified any functional limitations assessed by Dr. Vucetic. Furthermore, it is unclear which opinion of Dr. Koepke that Plaintiff alleges the ALJ credited improperly. (R. 14, PageID# 1656-1657). Plaintiff takes issue with Dr. Koepke's observations regarding fibromyalgia. *Id*. However, the ALJ accepted that Plaintiff had fibromyalgia and, on the prior remand, designated it as a severe impairment. (Tr. 529). Moreover, the ALJ expressly accorded "little weight" to Dr. Koepke's opinion because it occurred early during the relevant time period. (Tr. 537). To the extent Plaintiff is asserting that the ALJ actually accorded greater weight to the opinion than he otherwise purported, such an argument is tantamount to an invitation for this court to reweigh the evidence of record and to specifically assign even less weight to Dr. Koepke's opinion. This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). As such, issue four does not identify any error that could serve as grounds for a remand.

### 3. Issue Five: Functional Capacity Evaluation

Plaintiff asserts the ALJ failed to follow regulations and Social Security Rulings when he rejected the findings of a functional capacity evaluation ("FCE") performed on November 13, 2013, by physical therapist Jim Micall. (R. 14, PageID# 1658-1660, citing Tr. 1537-1551).

Despite his assertion, Plaintiff brief is bereft of a citation to any regulation requiring an ALJ to ascribe any special weight to an FCE or to engage in any specific procedural analysis to FCEs. *Id*. Plaintiff's lone citation in this section is to Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869 (Jul. 25, 2012), which concerns the evaluation of fibromyalgia and is silent as to FCEs.[5]

Plaintiff does aver that the ALJ "ignor[ed] the objective test findings in the FCE. R. 14, PageID# 1660). This assertion is untenable, as the ALJ considered the results of the FCE as follows:

> The opinion of Work Ability Functional Capacity Evaluation performed on November 22, 2013, by Jim Micall, PT, is given little weight for multiple reasons. The opinion is not given controlling weight because Mr. Micall is an examining source and not an acceptable medical source. Further, his opinion that the claimant is unable to tolerate sustained work activity without significantly increasing symptoms and that he could not even perform sedentary work is inconsistent with physical examination findings which were limited to tenderness in palpation, some pain with range of motion, muscle spasms, and symptoms of carpal tunnel syndrome. Moreover, his opinion is not consistent with the many activities of daily living, which were reported throughout the record and was not supported by valid testing. Finally, I would note that there was concern over the effort given during testing raising additional questions as to Mr. Micall's findings (27F).

(R. 538).

The ALJ plainly did not ignore the FCE and sufficiently articulated reasons for giving little weight to the conclusions contained therein. Again, it is not the role of this court to reweigh the evidence of record and decide that the FCE should have been ascribed more weight.

---

[5] Though Plaintiff cites SSR 12-2p for the proposition that fatigue associated with fibromyalgia may result in exertional limitations that prevent a person from doing the full range of work in a given exertional category, the ruling does not lend any legal authority to Plaintiff's general proposition that the ALJ failed to follow the regulations or rulings with respect to his evaluation of an FCE.

**4. Issue Six: RFC and Mischaracterization of the Evidence**

Plaintiff argues that the RFC is not supported by substantial evidence. (R. 14, PageID# 1660-1662). Specifically, Plaintiff asserts the ALJ based his RFC on a mischaracterization of the evidence. *Id*.

The RFC is an indication of an individual's work related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[6] The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). State Agency physicians Dr. Manos and Dr. Das both opined that Plaintiff could perform light exertional work—lift 20 pounds occasionally and ten pounds frequently and stand/walk for four hours, and sit for six hours in an eight-hour workday along with a number of non-exertional limitations. (Tr. 603-605, 637-639). Although the ALJ by and large incorporated their assessed non-exertional opinions, the ALJ ultimately ascribed only little weight to these opinions because he found the claimant should be limited to the more restrictive sedentary exertional level. (Tr. 538). Nevertheless, the above opinions certainly support a finding that the claimant could perform the lesser exertional requirements of sedentary work. 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.")

State Agency opinions may constitute substantial evidence supporting an ALJ's decision.

---

[6] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

*See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.") Thus, the RFC determination was supported by substantial evidence of record.

Instead of demonstrating that the RFC finding was unsupported by substantial evidence of record, Plaintiff instead attempts to offer a different interpretation of some of the Plaintiff's activities that were cited in the decision and attempts to refute or rebut the ALJ's analysis. (R. 14, PageID# 1661-1662, citing Tr. 540-541). Even assuming *arguendo* that ALJ mischaracterized, misinterpreted, or perhaps overstated some of the evidence of Plaintiff's activities or the frequency of said activities, the ALJ's RFC determination is not, as a result, devoid of substantial evidence. As stated above, the opinions of the State Agency physicians certainly support a finding of at least a sedentary exertional level. Also, a potential misstatement of some of the evidence does not axiomatically render the claimant's testimony credible. Again,

Plaintiff has not raised any challenge to the ALJ's credibility assessment. Thus, Plaintiff's argument fails to establish that the RFC determination—a determination that is properly reserved to the ALJ—was unsupportable merely by pointing to a different interpretation of some of the evidence of record.

**5. Issue Seven: Hypothetical Question**

Finally, Plaintiff argues that the hypothetical question the ALJ posed to the VE during the hearing was inaccurate because it did not contain a limitation requiring a one-minute rest period after every two minutes of activity—a limitation Plaintiff obtains from the above discussed FCE. (R. 14, PageID# 1662-1663).

Although a hypothetical question to a VE must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant, *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987), it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)), *adopted by* 2011 WL 441518 (Feb. 4, 2011); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc.*

*Sec.*, 372 Fed. App'x 582 (6th Cir. 2010) (same).

As discussed above, the ALJ did not accept the limitations contained in the FCE, was under no obligation to accept them, and adequately explained his reasons for rejecting them. As such, the ALJ was under no duty to incorporate rejected limitations into either the hypothetical question posed to the VE, or in the RFC.

### IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

s/*David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: February 12, 2019

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**